

FILED & ENTERED

JUN 09 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:     Khurram Mohammed, Debtor. | Case No.:    2:20-bk-14552-ER<br>Adv. No.:    2:20-ap-01168-ER |
| Munni Alvi Irone, dba Art 4 Peace Awards,<br>Plaintiff,<br>v.<br>Khurram Mohammed,<br>Defendant. | **MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

## I. Introduction

Before the Court is the *Motion for Default Judgment Under LBR 7055-1* (the "Motion for Default Judgment") filed by Munni Alva Irone, dba Art 4 Peace Awards ("Plaintiff").[1] Plaintiff was not represented by counsel at the time she filed the underlying complaint (the "Complaint"). After the Court entered Defendant's default and fixed a deadline for Plaintiff to file a motion for entry of default judgment, Plaintiff retained counsel.

The Complaint asserts a non-dischargeability claim under 11 U.S.C. § 523(a)(2)(A) (the "Non-dischargeability Claim"), as well as claims for (1) trademark infringement, contributory trademark infringement, vicarious trademark infringement, and trademark dilution under 15 U.S.C. §§ 1114 and 1125 and (2) unfair competition and false advertising under 15 U.S.C.

---

[1] Pursuant to Civil Rule 78(b) and Local Bankruptcy Rule 9013-1(j)(3), the Court finds this matter to be suitable for disposition without oral argument.

§ 1125(a) and Cal. Bus. & Prof. Code §§ 17200 and 17500 (collectively, the "Trademark Claims"). The Court finds that Plaintiff is entitled to the entry of default judgment on the Non-dischargeability Claim in the amount of $71,187.48. However, the Court lacks jurisdiction over the Trademark Claims, and is therefore required to dismiss such claims without prejudice.

## II. The Court Lacks Jurisdiction Over the Trademark Claims

Plaintiff alleges that Defendant has used her trademark "Arts 4 Peace Awards" to promote Defendant's business to Plaintiff's detriment, and that Defendant has been unjustly enriched through the use of her trademark. As a remedy for the alleged trademark infringement, Plaintiff seeks a judgment (1) directing GoDaddy, Inc. to transfer the domain name www.art4peaceawards.com from Defendant to Plaintiff; (2) enjoining Defendant from the continued use of the "Arts 4 Peace Awards" trademark, business name, and domain name; and (3) imposing a constructive trust in favor of Plaintiff with respect to any and all property held by Defendant relating to the "Arts 4 Peace Awards" trademark, business name, and domain name.

In the Motion for Default Judgment, Plaintiff asserts that the foregoing remedies are warranted by 11 U.S.C. § 105(a). The Complaint, however, contains no mention of 11 U.S.C. § 105(a). The Trademark Claims are based solely on 15 U.S.C. §§ 1114 and 1125 and Cal. Bus. & Prof. Code §§ 17200 and 17500. Nor does the Complaint seek entry of a judgment transferring the www.art4peaceawards.com domain name from Defendant to Plaintiff. A default judgment may not exceed the scope of relief demanded in the Complaint and may not be predicated upon legal theories not properly alleged in the Complaint. *See Alan Neuman Productions v. Albright*, 862 F.3d 1388, 1392–93 (9th Cir. 1988) (reversing default judgment for plaintiff on RICO claims because the complaint failed to properly allege such claims).

In determining whether Plaintiff is entitled to the entry of default judgment, the Court is limited to examining the allegations and legal theories that are set forth in the Complaint. It is not appropriate for Plaintiff to introduce new legal theories in support of the relief sought in the Complaint after Defendant's default has been entered. Defendant's decision not to participate in this litigation may have been based upon his assessment of the Complaint's legal merit. To allow Plaintiff to introduce new legal theories at this juncture would deprive Defendant of the due process to which he is entitled. Therefore, the Court does not consider whether Plaintiff is entitled to relief under 11 U.S.C. § 105(a) or under an unjust enrichment theory, as these theories were not set forth in the Complaint. Instead, the Court's determination of Plaintiff's entitlement to relief on account of the alleged trademark infringement is based upon an examination of the Trademark Claims as they are pleaded in the Complaint.

The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244, 163 L. Ed. 2d 1097 (2006). Because the Court lacks subject-matter jurisdiction over the Trademark Claims, the Court is required to dismiss those claims without prejudice. *See Arbaugh*, 546 U.S at 514 (a federal court must dismiss those claims over which it lacks jurisdiction).

The Court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The three types of jurisdiction conferred under 28 U.S.C. § 1334(b) are known as "arising under," "arising in," and "related to" jurisdiction. "Arising under" jurisdiction exists if "the cause of action is created by title 11." *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 909 (B.A.P. 9th Cir. 1999). "Arising in" jurisdiction applies to "those administrative proceedings that, while not based on any right

created by title 11, nevertheless have no existence outside bankruptcy." *Id.* "Related to" jurisdiction exists if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy…. An action is related to bankruptcy if the action could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (internal citations omitted).

The Court does not have any of the three types of jurisdiction under 28 U.S.C. § 1334(b) with respect to the Trademark Claims. There is no "arising under" jurisdiction because the Trademark Claims are not created by title 11. There is no "arising in" jurisdiction because the Trademark Claims are not an administrative matter unique to the bankruptcy process. There is no "related to" jurisdiction. The Defendant received a discharge on September 8, 2020, and his bankruptcy case was closed on October 20, 2020. Therefore, adjudication of the Trademark Claims could not have any effect upon the "handling and administration of the bankruptcy estate." *Fietz*, 852 F.2d at 457.

Because the Court is required to dismiss the Trademark Claims for lack of jurisdiction, the Court cannot grant Plaintiff any of the relief she requests in connection with the Trademark Claims. Therefore, the Court declines to enter judgment directing the transfer of the www.art4peaceawards.com domain name, enjoining Defendant from the continued use of the "Arts 4 Peace Awards" trademark, and imposing a constructive trust with respect to property related to the "Arts 4 Peace Awards" trademark.

## III. Plaintiff is Entitled to Entry of Default Judgment on the Non-Dischargeability Claim
### A. Facts Established by the Entry of Default

Once default has been entered, the well-pleaded factual allegations of the complaint are taken as true. *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir.1992). Through the Complaint and the declaration submitted in support of the Motion for Default Judgment, Plaintiff has established the following facts[2]:

1) Sometime around June 2018, Plaintiff and Defendant verbally agreed to organize an event at the Saban Theater located in Beverly Hills (the "Saban Event"). Under the agreement, Plaintiff was entitled to 10% of the ticket sales. The Saban Event was to be held on October 28, 2018.
2) Defendant claimed that he did not have the funds necessary to make the deposit to secure the Saban Theater. At Defendant's request, Plaintiff paid the $8,709.69 deposit,[3] relying upon Defendant's representation that he would reimburse her for the deposit later.
3) Several days prior to the event, Defendant advised Plaintiff that he did not want to do the event. Defendant then informed ticketholders that the event would be held at a different venue in Cerritos, and retained all proceeds of the ticket sales for himself. Plaintiff did not receive any monies from the ticket sales of the Saban Event.

---

[2] Because the Court lacks jurisdiction over the Trademark Claims, facts pertaining to those claims are not set forth herein.
[3] *See* Adv. Doc. No. 35 at p. 60 (Plaintiff's check for $8,709.69 for the deposit).

4) Plaintiff incurred $71,187.48 in costs to produce the Saban Event. Plaintiff's out-of-pocket production costs amounted to $46,395, comprised of costs for security ($6,000), food ($7,000), alcohol ($3,000), flowers ($500), a limousine ($500), a master of ceremonies ($500), a red carpet ($10,000), video equipment ($6,000), lodging for VIPs ($1,545), trophies ($4,480), banners ($600), and printing ($770).[4] Plaintiff spent an additional $19,492.48 to rent the venue.[5] Finally, Plaintiff spent $2,300 to purchase software for the event and $3,000 to open a bank account into which the proceeds of ticket sales were to be deposited.[6]

**B. Plaintiff is Entitled to Default Judgment Pursuant to § 523(a)(2)(A)**[7]

Section 523(a)(2)(A) provides: "A discharge under section 727 … of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To except debts from discharge, a creditor has the burden of proof under the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991).

To prevail on a § 523(a)(2)(A) claim on the grounds of false pretenses or false representation, a creditor must prove that:

> (1) the debtor made the representations;
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representations; and
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

Plaintiff has satisfied all the elements of § 523(a)(2)(A). In June of 2018, Defendant represented to Plaintiff that he would cooperate with her in organizing an event at the Saban Theater, and that Plaintiff would be entitled to 10% of the ticket proceeds of the event. Defendant's representation was false, since at the time Defendant made the representation he intended to divert ticketholders to his own competing event at a different venue. Defendant made these false representations for the purpose of deceiving Plaintiff. The fraudulent nature of Defendant's representation is established by his subsequent diversion of the Saban Event's

---

[4] *See* Decl. of Munni Alvi Irone [Adv. Doc. No. 35] at ¶ 24 and Doc. No. 35, Ex. F (itemization of production costs).

[5] Irone Decl. at ¶ 24 and Doc. No. 35, Ex. F (statement of balance due for rental of the venue).

[6] Irone Decl. at ¶ 18.

[7] In the Motion for Default Judgment, Plaintiff seeks entry of a non-dischargeable judgment pursuant to § 523(a)(2), (a)(4), and (a)(6). The Complaint asserts a claim under § 523(a)(2)(A) but does not assert claims under § 523(a)(4) or (a)(6). As discussed in Section II, above, the Court is limited to examining the legal theories set forth in the Complaint. Since the Complaint did not assert claims under § 523(a)(4) or (a)(6), the Court declines to enter default judgment on such claims.

ticketholders to his own competing event. *See McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 607 (B.A.P. 9th Cir. 1998) (internal citations omitted) ("'Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct.' Therefore, in determining whether the debtor had no intention to perform, a court may look to all the surrounding facts and circumstances."). Defendant's false representations caused Plaintiff to lose the substantial investment she made in the Saban Event. Plaintiff would not have invested in the Saban event had she known that Defendant's representations were false.

### C. Plaintiff is Not Entitled to Judgment in an Unliquidated Amount

Plaintiff does not seek entry of a judgment fixing the amount of damages sustained in connection with her § 523(a)(2)(A) claim. Plaintiff intends to liquidate the amount of her damages either in future state court proceedings or in a trademark action pending before the District Court. Plaintiff seeks to insure that her right to pursue relief against the Defendant before other courts will not be barred by the discharge injunction. Plaintiff requests that the Court enter judgment in her favor in an unliquidated amount, and permit Plaintiff to seek entry of an amended judgment in the event Plaintiff liquidates her damages in another forum.

The Court declines to enter an unliquidated judgment as requested by Plaintiff. First, in the context of a dischargeability action, there is no such thing as a judgment for an unliquidated amount of damages. What Plaintiff terms a "judgment" would in reality be an interlocutory order. Civil Rule 54(b) states that "any order or other decision, *however designated*, that adjudicates fewer than *all the claims* … may be revised at any time before the entry of a judgment adjudicating *all the claims*" (emphasis added). The Complaint alleges that Defendant is indebted to Plaintiff, pursuant to § 523(a)(2)(A), in the amount of $450,000. A purported "judgment" finding that Defendant is liable to Plaintiff under § 523(a)(2)(A) in an unliquidated amount would not adjudicate *all the claims* set forth in the Complaint, and therefore would constitute an interlocutory order as opposed to a final judgment.

Second, the postponement of the adjudication of Defendant's liability would leave Plaintiff's § 523(a)(2)(A) claim against Defendant pending indefinitely. The Court is obligated to apply the Federal Rules of Bankruptcy Procedure in a manner that secures "the just, *speedy*, and inexpensive determination of every case and proceeding" (emphasis added).[8] Honoring Plaintiff's request for entry of judgment in an unliquidated amount would be inconsistent with this obligation.

Third, the timely resolution of non-dischargeability complaints is an important bankruptcy policy, which would be contravened by entry of a purported "judgment" that left Defendant's liability undetermined for an indefinite time. This policy is exemplified by Bankruptcy Rule 4007(c), which sets a firm deadline for the filing of a non-dischargeability complaint that "cannot be extended unless a motion is made before" the deadline expires. *Willms v. Sanderson*, 723 F.3d 1094, 1100 (9th Cir. 2013). Defendant received a discharge on September 8, 2020.[9] Defendant is entitled to finality with respect to the scope of his discharge. The open-ended "judgment" sought by Plaintiff would deprive Defendant of that finality by leaving unresolved how much of Defendant's indebtedness to Plaintiff is non-dischargeable.

Plaintiff's Motion for Default Judgment contains sufficient evidence to enable the Court to adjudicate the amount of Defendant's liability under § 523(a)(2)(A). For the reasons set forth in

---

[8] Bankruptcy Rule 1001.
[9] Bankr. Doc. No. 25.

Section III.D., below, the Court finds that Plaintiff is entitled to a non-dischargeable judgment against Defendant in the amount of $71,187.48 pursuant to § 523(a)(2)(A).

### D. Plaintiff is Entitled to a Non-dischargeable Judgment in the Amount of $71,187.48 Pursuant to § 523(a)(2)(A)

As set forth in Section III.A., above, Plaintiff spent $71,187.48 to produce the Saban Event but did not receive any revenue from the event since Defendant diverted all the proceeds from the ticket sales to himself. Accordingly, Plaintiff is entitled to a non-dischargeable judgment against Defendant in the amount of $71,187.48 pursuant to § 523(a)(2)(A).

The Court declines to award Plaintiff damages on account of her foregone 10% share of the diverted ticket sales. Plaintiff testifies that she believes that "Defendant collected approximately $250,000 from ticket sales" from his competing event,[10] but does not set forth any facts upon which this belief is based. The entry of default establishes the truth of the well-pleaded allegations in the Complaint but does not establish the amount of Plaintiff's damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). It is Plaintiff's burden to establish the amount of her damages. Plaintiff's declaration testimony that she believes that Defendant collected $250,000 from ticket sales, without any further testimony setting forth the basis for this belief, is not sufficient to establish Plaintiff's entitlement to damages on account of her foregone share of the ticket sales.

## IV. Conclusion

Based upon the foregoing, the Court will (1) dismiss the Trademark Claims for lack of jurisdiction and (2) enter default judgment in favor of Plaintiff, in the amount of $71,187.48, on the § 523(a)(2)(A) claim. The Court will enter an order and judgment consistent with this Memorandum of Decision.

###

Date: June 9, 2021

Ernest M. Robles
United States Bankruptcy Judge

---

[10] Irone Decl. at ¶ 22.